UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DONALD KINDER : | |
|    *Plaintiff* : | |
| : | |
| v. : | |
| : | |
| RHODE ISLAND TEXTILE COMPANY : | |
| d/b/a WESTMINSTER PET PRODUCTS, : | C.A. No. |
| WPP ACQUISITION, LLC d/b/a : | |
| WESTMINSTER PET PRODUCTS, : | |
| and UNITEDHEALTHCARE : | |
| INSURANCE COMPANY : | |
|    *Defendants* : | |

## COMPLAINT

Now comes the Plaintiff in the above entitled matter and complains as follows:

### Nature of Action

1. This is an action against Rhode Island Textile Company d/b/a Westminster Pet Products ("WPP") and UnitedHealthcare Insurance Company ("United") for breach of their fiduciary duties in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). Plaintiff seeks equitable remedies, costs and attorneys' fees associated with this action, as provided by ERISA.

2. WPP established a group health plan, which provides medical benefits to eligible employees and their dependents.

3. United was the claims administrator and insurer of WPP's group health plan.

4. At all relevant times, the plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and Plaintiff was a beneficiary of, and participant in, the plan, as a result of his wife's employment, as defined by 29 U.S.C. §1002(7).

5. At all relevant times, Plaintiff was eligible for benefits under the plan.

6. Upon information and belief, Rhode Island Textile Company d/b/a Westminster Pet Products was acquired by AUA Private Equity Partners, LLC through WPP Acquisition, LLC in or about September of 2020.

7. Upon information and belief, Rhode Island Textile Company d/b/a Westminster Pet Products was the plan sponsor and a plan fiduciary for the group health plan at all times relevant to this action.

8. Upon information and belief, if this court determines that Rhode Island Textile Company d/b/a Westminster Pet Products breached its fiduciary duties and equitable remedies are available, then Rhode Island Textile Company d/b/a Westminster Pet Products is responsible for satisfying any judgment issued by this Court against it.

9. Upon information and belief, if this court determines that Rhode Island Textile Company d/b/a Westminster Pet Products breached its fiduciary duties and equitable remedies are available, then WPP Acquisition, LLC is responsible for satisfying any judgment issued by this Court against Rhode Island Textile Company d/b/a Westminster Pet Products.

**Parties**

10. Plaintiff, Donald Kinder, is and was at all relevant times a resident of the State of Rhode Island.

11. Defendant, Rhode Island Textile Company d/b/a Westminster Pet Products is a company with its principal place of business in the State of Rhode Island.

12. Defendant, WPP Acquisition, LLC, upon information and belief, was a company registered to do business in Rhode Island and having a principal place of business located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

13. Defendant, UnitedHealthcare Insurance Company, upon information and belief, was at all relevant times an insurance company registered to do business in Rhode Island and having a usual place of business located at 185 Asylum Street, Hartford, CT 06103.

## Jurisdiction and Venue

14. At all relevant times, Defendants United and WPP Acquisition, LLC had sufficient minimum contacts within the State of Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode Island's Long Arm Statute.

15. As to Plaintiff's claims under the group health plan, jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f).  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

16. As to Plaintiff's claims under the plan, ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials.  The administrative appeal process has been exhausted, is satisfied, and this dispute is ripe for suit.

17. Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island, and Defendants are subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. §1391(c)(2).

## Statements of Fact

18. For many years, Mr. Kinder received medical coverage under the group health benefit plan sponsored by WPP and insured by United (hereinafter "the Plan").

19. Upon information and belief, Mr. Kinder has been eligible for Medicare insurance since approximately August of 2013 due to his receipt of Social Security Disability ("SSDI") benefits.

20. In or about August of 2013, Mr. Kinder elected Medicare Part A (hospital coverage) and did not elect Medicare Part B (medical coverage), because he received medical coverage under the Plan.

21. After August of 2013 and until at least September 13, 2019, United processed and paid the claims for charges related to Mr. Kinder's medical care with United as the primary insurance.

**Mr. Kinder underwent two knee surgeries after receiving claim preapproval from United**

22. In 2019, United preapproved Mr. Kinder's claims for two knee surgeries.

23. United's preapproval letters stated that "it was determined that the treatment is medically necessary and is covered by your plan."

24. Mr. Kinder underwent the first knee surgery on March 1, 2019 and the second knee surgery on September 13, 2019.

25. Upon information and belief, United processed and paid the claims for charges related to the two knee surgeries, as well as the charges for the miscellaneous medical care associated with those surgeries, with United as the primary insurance.

**United retroactively denied part of the claims that it had preapproved and paid**

26. After Mr. Kinder underwent the surgeries, United reprocessed Mr. Kinder's 2019 health claims and partially denied them.

27. United reprocessed Mr. Kinder's 2019 health claims with Medicare as the primary insurance, and United as the secondary insurance.

28. Upon information and belief, in reprocessing Mr. Kinder's claims, United used the providers' billed charges as the allowable expense; estimated the amount Medicare would have paid had Mr. Kinder had Part B coverage; and then modified its payments such that United's payment and the Medicare estimation amount did not exceed the allowable expense.

29. In reprocessing Mr. Kinder's claims, United clawed back some of the money it had previously paid to medical providers.

30. As a result of United reprocessing Mr. Kinder's claims, Mr. Kinder was left with approximately $80,000 in outstanding medical bills.

31. The majority of these bills were from the hospital that performed Mr. Kinder's surgeries.

32. The hospital initiated collection efforts against Mr. Kinder due to the outstanding medical bills.

33. After United reprocessed Mr. Kinder's claims, he signed up for Medicare Part B, but Medicare refused to cover the 2019 medical charges, as they did not qualify under Mr. Kinder's Part A coverage and he did not have Part B coverage at the time of service.

34. Prior to his knee surgeries, Mr. Kinder reasonably believed that United would provide primary coverage for his medical bills.

35. Prior to his knee surgeries, Mr. Kinder was not aware that he needed to elect Medicare Part B as his primary coverage.

36. Prior to his knee surgeries, neither WPP nor United advised Mr. Kinder to elect Medicare Part B as his primary coverage.

37. The Plan documents did not specify that Mr. Kinder was required to sign up for Medicare Part B.

38. The Plan documents outlined generally what type of coverage is primary and what type of coverage is secondary.

39. The Plan documents did not outline the specific rules regarding when Medicare coverage would be primary and Plan coverage secondary.

40. The Plan documents did not specify that Plan coverage that was previously primary could become secondary, when there was no change in the types of coverage maintained by a Plan participant.

**Mr. Kinder tried unsuccessfully to resolve this issue with the plan sponsor WPP**

41. Mr. Kinder tried to resolve the issue with United through WPP and its benefits broker.

42. On September 2, 2020, Scott Mathieu, Vice President of Account Management at United, wrote a letter to WPP's benefits broker stating:

> Since group size changed in October 2018, Medicare will be primary as of 01/01/2019 per Medicare COB [(coordination of benefits)] rules, as Mr. Kinder is under 65 years old and the group has less than 100 employees.
>
> Based on the above, UnitedHealthcare updated its COB information for this member for 2018 to show UnitedHealthcare primary, and all 2018 claims were processed to pay as UHC primary. However, all claims in 2019 were processed as UHC secondary with Medicare Part B estimation, meaning UnitedHealthcare paid all 2019 claims as if Mr. Kinder had Medicare Part B.

43. Prior to his knee surgeries, neither United nor WPP notified Mr. Kinder of the change in employer group size or its impact on his health coverage.

44. Had WPP or United advised Mr. Kinder that he now needed Medicare Part B, he would have elected it prior to his knee surgeries.

45. Had Mr. Kinder known that he was now required to elect Medicare Part B as his primary coverage, he would have delayed his knee surgeries until he had obtained Medicare Part B coverage.

46. United's failure to provide Mr. Kinder with important information about his coverage caused Mr. Kinder to incur unpaid medical bills and other damages.

47. WPP's failure to provide Mr. Kinder with important information about his coverage caused Mr. Kinder to incur unpaid medical bills and other damages.

**Mr. Kinder filed an administrative appeal with United, which United denied**

48. On December 2, 2020 and July 6, 2021, Mr. Kinder filed an administrative appeal with United, challenging its decision to reprocess the 2019 claims and retroactively reverse its own previous decision to approve and process his claims with United as the primary insurance.

49. United denied Mr. Kinder's appeal, maintaining that it processed the claims correctly.

50. Mr. Kinder's claims against United should be reviewed by this Court *de novo*.

51. Mr. Kinder's claims against WPP should be reviewed by this Court *de novo*.

**COUNT I**
**(Breach of Fiduciary Duty Against United**
**– ERISA §502(a)(3), 29 U.S.C. §1132(a)(3))**

52. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

53. United was the named claims fiduciary under the Plan.

54. The Plan provides that "UnitedHealthcare Insurance Company . . . is your Plan's Claims Fiduciary and has been assigned this responsibility by your Plan Sponsor."

55. As part of its role as claims fiduciary, United was responsible for monitoring WPP's group size, as such information impacts the coordination of benefits and how claims are processed.

56. Accordingly, United is a fiduciary for the Plan within the meaning of 29 U.S.C. § 1002(21).

57. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

58. United had a duty to disclose complete and accurate material information about the Plan to Mr. Kinder.

59. United had a duty to disclose to Mr. Kinder material facts affecting Mr. Kinder's interests, which United knew Mr. Kinder did not know and which Mr. Kinder needed to know for his protection.

60. United's duty to inform included not only a negative duty not to misinform, but also an affirmative duty to inform when it knew that silence might be harmful.

61. A Plan fiduciary breaches its duty to its beneficiary where it is aware of the beneficiary's status and situation, but fails to convey complete and accurate information material to the beneficiary's circumstance, even if that information comprises items about which the beneficiary has not specifically inquired.

62. A Plan fiduciary's failure to disclose information is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision.

63. United knew or should have known that Mr. Kinder was eligible for Medicare.

64. United knew or should have known that Mr. Kinder was not aware of the employer's group size.

65. United knew or should have known that a change in employer group size was material to Mr. Kinder, as it would affect the coordination of benefits and the way claims were processed.

66. United knew or should have known that a change in the coordination of benefits and the way claims were processed could be harmful to Mr. Kinder.

67. Prior to his knee surgeries, Mr. Kinder could not make an informed decision regarding his health insurance coverage elections and whether he needed to obtain Medicare Part B coverage, without knowing about the change in employer group size and that United would no longer provide coverage on a primary basis.

68. United breached its fiduciary duties owed to Mr. Kinder by:

    a. Pre-approving Mr. Kinder's claims for his knee surgeries, and then, after he underwent the surgeries, reprocessing the claims and partially denying them.

    b. Failing to inform Mr. Kinder that he needed to elect Medicare Part B as his primary coverage before he underwent knee surgery.

    c. Failing to inform Mr. Kinder about the change in employer group size, which changed the coordination of benefits and how claims were processed;

  d. Retroactively applying the change in coordination of benefits and how claims were processed due to the change in employer group size, such that Mr. Kinder became responsible for substantial medical charges that had already been incurred and previously approved and covered with United as the primary insurance;

  e. Failing to provide complete and accurate information about the Plan that was necessary for Mr. Kinder to determine for himself whether he needed to elect Medicare Part B;

  f. Failing to otherwise deal fairly and honestly with Mr. Kinder.

69. As a result of United's breach of fiduciary duties, Plaintiff suffered actual harm and damages.

## COUNT II
### (Breach of Fiduciary Duty Against WPP – ERISA §502(a)(3), 29 U.S.C. §1132(a)(3))

70. Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

71. WPP was the Plan sponsor and named fiduciary.

72. The Plan provides that "[t]he Plan Sponsor retains all fiduciary responsibilities with respect to the Plan, except to the extent the Plan Sponsor has assigned or allocated to other persons or entities one or more fiduciary responsibilities with respect to the Plan."

73. Accordingly, WPP is a fiduciary for the Plan within the meaning of 29 U.S.C. § 1002(21).

74. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

75. WPP had a duty to disclose complete and accurate material information about the Plan to Mr. Kinder.

76. WPP had a duty to disclose to Mr. Kinder material facts affecting Mr. Kinder's interests, which WPP knew Mr. Kinder did not know and which Mr. Kinder needed to know for his protection.

77. WPP's duty to inform included not only a negative duty not to misinform, but also an affirmative duty to inform when it knew that silence might be harmful.

78. A Plan fiduciary breaches its duty to its beneficiary where it is aware of the beneficiary's status and situation, but fails to convey complete and accurate information material to the beneficiary's circumstance, even if that information comprises items about which the beneficiary has not specifically inquired.

79. A Plan fiduciary's failure to disclose information is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision.

80. WPP knew or should have known that Mr. Kinder was eligible for Medicare.

81. WPP knew or should have known that Mr. Kinder was not aware of the employer's group size.

82. WPP knew or should have known that a change in employer group size was material to Mr. Kinder, as it would affect the coordination of benefits and the way claims were processed.

83. WPP knew or should have known that a change in the coordination of benefits and the way claims were processed could be harmful to Mr. Kinder.

84. Prior to his knee surgeries, Mr. Kinder could not make an informed decision regarding his health insurance coverage elections and whether he needed to obtain Medicare Part B coverage, without knowing about the change in employer group size and that United would no longer provide coverage on a primary basis.

85. WPP breached its fiduciary duties owed to Mr. Kinder by:

    a. Failing to inform Mr. Kinder about the change in employer group size, which changed the coordination of benefits and how claims were processed;

    b. Failing to inform Mr. Kinder that he needed to elect Medicare Part B as his primary coverage before he underwent knee surgery.

    c. Failing to provide complete and accurate information about the Plan that was necessary for Mr. Kinder to determine for himself whether he needed to elect Medicare Part B;

    d. Failing to otherwise deal fairly and honestly with Mr. Kinder.

86. As a result of WPP's breach of fiduciary duties, Plaintiff suffered actual harm and damages.

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendants.

B. That the Court order equitable remedies in the form of surcharge and such other forms of relief as the Court may find appropriate, in the amount of all costs for Plaintiff's surgeries and follow up care including, but not limited to, $80,000.00 (outstanding medical expenses), or such other amount as is proven by the evidence.

C. That the Court order Defendants to pay Plaintiff prejudgment interest.

D. That the Court award Plaintiff's attorneys' fees and costs.

E. For such other relief as this Court deems just and proper.

Plaintiff, by his attorneys,

*/s/* Leah Small
J. Scott Kilpatrick, Esq. (#4036)
jskilpatrick@cck-law.com
Mason J. Waring, Esq. (#7737)
mwaring@cck-law.com
Leah Small, Esq. (#9701)
lsmall@cck-law.com
Chisholm Chisholm & Kilpatrick LTD
321 South Main Street #200
Providence, RI 02903
(401) 331-6300 Telephone
(401) 421-3185 Fax